JESSE SMITH et al. *v.* E. RICHARDSON.

**Estate-Tail — Fee Simple by Statute.**

   A deed to land to Mary A. Smith "and the heirs of her body begotten by Lemuel H. Smith" create an estate-tail in the first taker by the common law, and is a fee by the statute of this State.[1]

**Construction of Statutes — Rule of Property — Stare Decisis.**

   Although not concurring in a prior decision of this court in construing a statute, it will be followed when a rule of property is established by it.[2]

**Same — Re-enactment.**

   This court will not overrule a former decision of this court construing a statute when it has been re-enacted after the decision, the presumption being that it was done with full knowledge on the part of the Legislature of the construction put upon it by the court.

On June 17, 1862, Jonathan and Mary, D. Smith conveyed, by deed, a certain tract of land in Hinds county to Mary A. Smith, wife of Lemuel H. Smith, "and the heirs of her body begotten by the said Lemuel H. Smith." Afterwards, on the 2nd

---

[1] "Art. 3. Estates in fee-tail are prohibited; and every estate which shall be created an estate in fee-tail shall be an estate in fee-simple; *Provided.* that any person may make a conveyance, or a devise, of lands to a succession of donees then living, not exceeding two; and to the heirs of the body of the remainder man, and in default thereof, to the right heirs of the donor in fee-simple." Code of 1857, p. 307, art. 3; Code of 1871, p. 499, § 2286; Code of 1880, p. 345, § 1190.

"Estates in fee-tail are prohibited; and every estate which, but for this statute, would be an estate in fee-tail, shall be an estate in fee-simple; but any person may make a conveyance or devise of lands to a succession of donees then living, not exceeding two, and to the heirs of the body of the remainder-man, and in default thereof, to the right heirs of the donor, in fee-simple." Code of 1892, § 2436; Code of 1906, § 2765.

"Every estate in lands or slaves, which now is or shall hereafter be created an estate in fee-tail, shall be an estate in fee-simple; and the same shall be discharged of the conditions annexed thereto by the common law, restraining alienations before the donee shall have issue, so that the donee, or person in whom the conditional fee is vested, or shall vest, shall have the same power over the said estates, as if they were pure and absolute fees; *Provided,* that any person may make a conveyance or devise of lands to a succession of

day of February, 1875, the same parties made a second deed to said Mary A. Smith to the same land and some additional land; this deed was to "Mary A. Smith, wife of Lemuel H. Smith, during her life, and to her heirs begotten by said Lemuel Smith, forever."

Mary A. Smith, after the last deed was executed, gave a deed of trust on the said land to T. E. Richardson & Co., to secure a debt she owed them. The deed of trust was foreclosed, and they

donees then living, and the heir or heirs of the body of the remainder-man, and in default thereof, to the right heirs of the donor in fee simple." Hutchinson's Code, p. 609, § 24; Poindexter's Code, p. 458; Acts of 1822, § 24.

The statute furnishes a rule of construction, simple, obvious, and intelligible; one which sweeps away the whole mass of former adjudications on the subject, and so peremptory that the courts may not feel at liberty to disregard it. Kirby v. Calhoun, 8 S. & M. 462.

A gift to A, "in trust for the grantor's wife and the heirs of her body by the grantor begotten or to be begotten," creates an estate in special tail in the wife by the common law, and is a fee by our statute; and the words, "heirs of her body," &c., are words of limitation and not of purchase. McKenzie v. Jones, 39 Miss. 230.

The words "heirs of the body," in a conveyance of a legal estate, are words of limitation, and, except for the statute, would create an estate in fee-tail. But under art. 3, p. 307, Code 1857, such an estate is prohibited and the instrument by which it is sought to be created, passes an estate in fee-simple. Dibrell v. Carlisle, 48 Miss. 691.

And so, a conveyance to a trustee which limits a use to a woman and the heirs of her body to be begotten by her husband, the grantor, would, under the statute de donis, create a fee-tail, and this by said statute is converted into a fee-simple. Sudduth v. Sudduth, 60 Miss. 366.

Under art. 3, p. 307, Code 1857, prohibiting estates in fee-tail and converting them into estates in fee simple, a will which gives the property of a testator to the male descendants of his children, and excludes his female grandchildren, though good as to personalty, is void as to land devised. And as to the land, the devise in the above case cannot be maintained under the proviso of the statute, authorizing a devise to a succession of donees then living, not exceeding two, because the estate limited may be held by each of the four children of the testator in succession. Hudson v. Gray, 58 Miss. 882.

The proviso to section 24, Act of 1822 (Hutch. Code, p. 609), permits conveyances to successions of donees then living, and the heir or heirs of the body of remainder-man. Such limitation need not be to the heirs of the body generally, but may be to a specified class of such heirs, as, for instance, those who attain majority or marry. Cannon v. Barry, 59 Miss. 289.

Under Code 1880, section 1190 (Code 1892, § 2436), prohibiting estates-tail, but providing that a conveyance or devise may be made to a succession of

purchased the lands, and afterwards sold it in fee simple to E. Richardson. Appellants, the surviving children of Mary A. Smith and Lemuel H. Smith, they being dead, filed the bill in this case against E. Richardson to cancel his deed and the trustee's deed to T. Richardson & Co., as clouds on their title, claiming that the deeds from Jonathan and Mary D. Smith to Mary A. Smith only conveyed a life-estate to Mary A. Smith, and that they took the remainder. The defendant demurred to the bill,

living donees, not exceeding two, and the heirs of the remainder-man, and in default thereof, to the right heirs of the donor in fee simple:

(a) A grantor who reserves out of the operation of his deed a life-estate for himself cannot be counted as one of the donees within whose life the ultimate fee must vest in order to preserve the deed under the rule against perpetuities.

(b) A conveyance to two designated persons, with cross-remainders in favor of the survivor in case of the death of either without issue, and a conditional limitation over to a third person, the right heir of the donor, in case of the death of the two first takers, without issue, is valid.

(c) A limitation over to a designated person, being one of the right heirs of the donor, conditioned on the death of two specified donees without issue, is valid.

(d) The right heirs of the donor take by purchase, and not by descent.

(e) The section by its express terms is applicable to conveyances as well as devises.

(f) Its object is to prescribe a limit of time beyond which the vesting of the estate in fee cannot be suspended, but within that limit it permits the exercise of unbounded discretion by the donor. Banking Co. *v.* Field, 84 Miss. 646; 37 So. 139.

Decedent executed an instrument reciting: "I hereby grant, bargain, sell, convey and warrant" to G. (his wife) "her lifetime, the following described property," and at the end of G.'s life "I will this property" to B. (a daughter) "all of her lifetime, and after her (B.'s) lifetime, said described property goes to her children and their heirs and assigns forever." *Held,* that the instrument, having been executed and acknowledged as a deed and not as a will, would be construed as a conveyance to a "succession of donees then living and to the heirs of the body of the remainder-man," as authorized by Code 1892, section 2436, and vested in the grantor's wife an estate for life, then to B. for life, and then to B.'s children, who were the heirs of her body, in fee. Brinson *v.* Sandifer, 42 So. 89.

Where there were conflicting decisions of this court on the same point, the first wrong, and the last right, this court will adhere to the last decision, even where a course of practice in relation to the giving of notice of protests of bills and notes has grown up under the first decision, which would cause loss and inconvenience by its reversal. Hogatt *v.* Bingamann, 7 How, 565.

This court is not precluded by the decisions of the (old) Supreme Court,

and the demurrer was sustained, and the bill dismissed.   From that decree complainants appeal.

APPEALED from Chancery Court, Hinds county, First District, E. G. PEYTON, Chancellor.

Affirmed, June 4, 1883.

*Attorney for appellant, Frank Johnston.*

*Attorneys for appellee, Nugent & McWillie, and Shelton & Shelton, and W. P. & J. B. Harris.*

Brief of Frank Johnston:

The deeds are not within the rule in Shelley's case.   I will simply state that rule:   "That when the ancestor by any gift or

but will decide according to its own convictions of law.   Perhaps no general rule can be laid down, fixing the circumstances which shall determine whether an erroneous decision shall be followed or reversed, but the circumstances of each case must be looked to—the extent of influence on contracts and interests which the former decision may have had, whether it be only doubtful or clearly against principle, whether sustained by some authority or opposed to all. Where all this is done, if no particular injury will result from the reversal of an erroneous rule once recognized, it will be done.   Garland *v.* Rowan, 2 S. & M. 617.

A change by this court of rules of law which it has once established, and on the faith of which contracts have been made or rights acquired, will produce most of the injurious effects of retrospective legislation.   Shelton *v.* Hamilton, 1 Cush. 496.

This court will not adhere to a single decision, in conflict with a long, uniform, and well-settled train of adjudications in other courts, which are based on principles of the soundest policy, when under that decision no important rights could in any likelihood have arisen.   Gully *v.* Dunlap, 2 Cush. 410.

Rules of law which relate principally to matters of expediency, when once settled by this court, will not be changed.   Davidson *v.* Allen, 35 Miss. 419.

This court will not lightly depart from its former rulings, but when a former decision is on a mere point of practice, and no rights have grown up under it, the court will, if it be erroneous, reverse it.   Gwin *v.* McCarroll, 1 S. & M. 351.

Violators of law cannot claim a vested interest in rules which have been erroneously sanctioned.   Lanier *v.* State, 57 Miss. 102.

This court uniformly refuses to overrule a decision settling the construction of a statute, where, after the decision, the statute has been re-enacted.   Shot-

conveyance taketh an estate of freehold, and in the same gift or conveyance, an estate is limited either mediately or immediately to his heirs in fee or in tail, the words 'the heirs' are words of limitation of the estate, and not words of purchase." 4 Kent, 215.

Mr. Preston says where the limitation to "his heirs" or "the heirs of his body" are designated as a class of persons to take in *succession* from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate. 1 Preston on Estates, 263-419.

well *v.* Covington, 69 Miss. 735; 12 So. 260; Wetherbee *v.* Roots, 72 Miss. 355; 16 So. 902.

A decision of this State erroneously holding that the title to sixteenth section school lands is in the United States instead of the State, does not establish a rule of property, and though followed for many years, the doctrine of *stare decisis* will not be applied. Jones *v.* Madison Co., 72 Miss. 777; 18 So. 87.

Section 1334, Code 1871, restricting appeals to this court in causes originating in the justice's court to cases in which the amount in value exceeds $50, having been re-enacted without change—as section 2354, Code 1880, after the decision in Jackson *v.* Whitfield, 51 Miss. 202, that interest is not to be considered in determining the sum in controversy—the court will not disturb the construction, though not satisfied of its correctness. Davis *v.* Holberg, 59 Miss. 362.

This court uniformly refuses to overrule a decision settling the construction of a statute, where, after the decision, the statute has been re-enacted. Lombard *v.* Lombard, 57 Miss. 171; Davis *v.* Holberg, 59 Miss. 362; Bank *v.* Duncan, 56 Miss. 166; Madison Co. *v.* Brown, 67 Miss. 684; 7 So. 516.

A decision that a statute constitutes a contract, and that an act repealing it is void, is not an estoppel to a subsequent decision holding that the former statute itself is unconstitutional. Adams *v.* Y. & M. V. R. R., 77 Miss. 194; 24 So. 200.

The doctrine of *stare decisis* cannot be invoked in favor of decisions on former statutes which were merely similar to, but not identical with the one under review. Adams *v.* Y. & M. V. R. R., 77 Miss. 194; 24 So. 200.

The rule of *stare decisis* is more properly departed from in a case involving the question whether the State has alienated its right to tax a private corporation. Adams *v.* Y. & M. V. R. R., 77 Miss. 194; 24 So. 200.

A court is not bound by expressions in its former decisions on points which were not contested. Adams *v.* Y. & M. V. R. R., 77 Miss. 194; 24 So. 200.

In determining whether or not an issue has been previously adjudicated, the Supreme Court will be governed by the record in such previous trial, and not by the assumption by counsel on argument thereof that the issues therein embraced were the issues which are raised in the subsequent action. Hart *v.* Chemical Nat. Bank, 27 So. 926.

A case to fall within the rule must contain the words embraced in the rule, thus: it must have been the words "heirs" or "heirs of the body." If these precise words are employed, then the first taker has the whole estate in fee. But the point is this, that *these words are not used in the deed.* But other, and in legal observation, very different words, viz: "The heirs of the body, begotten by Lemuel Smith."

The rule in Shelley's case was based on the idea that the words, "heirs" or "heirs of the body," generally indicated simply the legal course of descent, and hence were construed as words of inheritance and not words as purchase, and therefore the estate went to the first taker, with his heirs or heirs of his body generally to take by descent from him, as *his heirs,* and not as the beginning of a new stock.

But where the words actually used break the legal descent, or deflect it from the course it would follow at law, and give it an operation different from the legal effect of the very words of Shelley's case, manifestly that rule does not apply. When the testator annexes words of explanation to the word heirs, as to the heirs of A now living, or where he superadds words of explanation, and a new inheritance is grafted upon the heirs to whom he gives the estate, the rule does not govern. 4 Kent, 221.

The real test is whether the superadded words vary the sense and operation. 4 Kent, 222.

It is too plain for argument that the words "the heirs of A's body begotten by B" have varied the sense or operation of the words "heirs" or "heirs of the body" generally. A very different set of persons might take in the two cases. It is very plain to my mind that the case is not governed by the rule in Shelley's case.

Mr. Shelton puts the case on another ground, which is equally untenable. His proposition is that the remainder in fee in the children is *destroyed,* and the *life* estate in Mrs. Smith is enlarged in an absolute fee, by virtue of the statutes, Codes 1857 and 1871.

Thus "Estates in fee-tail are prohibited; and every estate which shall be created an estate in fee-tail, shall be an estate in fee-simple; provided, that any person may make a conveyance or a devise of land to a succession of donees then living, not exceeding two, and to the right heirs of the body of the remainder-man, and in default thereof, to the right heirs of the donor in fee-simple. Code 1857, art. 3, p. 307. (Same re-enacted, Code of 1871.)

The fallacy of Mr. Shelton's argument is that he ignores the *proviso* which limits the *extent of entails;* the prohibition is aimed at perpetuities, and it *expressly allows* an entailment to a certain extent.    Language could not be plainer.   A conveyance may be made to two donees then living, *in succession,* and to the heirs of the body of the remainder-man and reversion to the heirs of the donor.    That is, this can be accomplished under the statute : to A for life, and then to B for life, and then to the heirs *of the body* of B in remainder; and in default of such heirs, a reversion to the right heirs of the grantor.    Such an entail, limited, or succession of estates, or whatever you may choose to call it, is expressly allowed by the statute.   It is too plain for argument that the deed in this case does not go as far as allowed by the law. There are not two successive donees, and there is no contingent reversionary estate provided for.    It might have been extended so as to embrace both.    To defeat this deed, that is, to defeat the fee-simple in remainder in *the heirs* (children), and at the same time against the very terms of the deed, to enlarge the life-estate of Mrs. Smith into a fee, would be to repeal the statute.    You would commence to defeat the entail, or dock the entail, only at the point where it violated the statute.    It is the limitation that is prohibited by the statute that is *void.*    2 Mash. Real Prop. 360 ; 45 Penn. St. 27 ; Sandf., ch. 64.

There, the *wife* would take for life, and the children would take *the fee,* even if it was a special *entail,* and this because the statute allows a conveyance to two donees, and over to the heirs of the body, etc.    The life-estate is not prohibited; the estate over to the heirs of the body of the first taker, and even of a second donee is not prohibited, and therefore good.    Therefore, it is unreasonable and a flagrant violation of the statute to defeat the conveyance in so far as it is good, or might be operative within the limits allowed by the proviso.

If the deed had been to her and her heirs, *habendum* to her and the heirs of her body, she would have taken an estate-tail.    Co. Litt. 21a ; Craises' Digest, §§ 74, 90.

There is no conflict between the two parts of the deed.    The first does not give Mrs. Smith an estate in fee-simple.    The words "heirs of her body begotten by Lemuel Smith," never had the effect of vesting a fee in the first taker, under the common law

rule, or the rule in Shelley's case. She would have been a life-estate as a tenant in tail. Robinson *v.* Payne, 58 Miss. 698.

The rule there was an estate in fee-simple could not be cut down to an estate less than an estate of inheritance. P. 698, and cases cited.

Where no estate is limited by the first part the *habendum* may declare it. 9 Allen, 168; 44 Me. 415; 2 Root, 205; 4 D. & B. 431.

The *habendum* may explain what needs explanation. 3 Wash. on Real Prop. 372, § 61.

Of course, it won't do to say that the first *clause* made an *entail,* which was converted by the statute into an estate in fee, and that therefore the first clause created a fee-simple estate, and could not be cut down or explained by the second clause. Because in construing a deed in the different parts, we must take the language that we actually find in the deed, and not a lot of fictions that are only intended in absence of express terms. Because the statute does not condemn all entails, but only certain entails.

Brief of Shelton & Shelton:

The first deed, exhibit A, dated June 17, 1862, conveys the land to Mrs. Smith, wife of L. H. Smith, and her heirs of her body, begotten by the said L. H. Smith; there is no *habendum* clause in this deed, its warranty is "to Mary H. Smith and her heirs as aforesaid."

The second deed, exhibit B, dated February 2, 1875, conveys the same lands, *plus* one hundred and twenty acres, "to Mary H. Smith and her heirs of her body, begotten by L. H. Smith," its *habendum* is "to hold to Mary H. Smith, during her life, and to her heirs begotten by L. H. Smith, forever."

Under the common law, either deed would have created an estate-tail in Mrs. Smith, with inheritance to her children by Smith, and their lineal descendants; this, I propose to prove. * * *

The two modes of creating perpetuities are: One by entailment, which confines inheritance to lineal descendants of a limited class defined by writing; the other by an indefinite succession of donees. Either mode creates an indestructible perpetuity—one by inheritance, the other by purchase. * * *

If there is a State in the Union that has not legislated about

both modes, I do not know it. Certainly Mississippi has, about both. As to one mode, she has provided that "estates in fee-tail are prohibited and every estate which shall be created an estate-tail, shall be an estate in fee-simple." As to the other, she has provided, that "any person may make a conveyance or devise of lands to a succession of donees then living, not exceeding two, and to the heirs of the body of the remainder-man, and in default thereof to the right heirs of the donor in fee-simple." Code of 1871, §§ 22, 86.

My position is, that each of said two clauses of said section had its function to perform in the prevention of perpetuities—*one* to prohibit the narrow unending line created by procreation from the first taker; the *other* by permitting conveyance or devise to a succession of only two living donees and heirs of the remainder-man.

Perpetuities would not have been prevented if either clause had been omitted; they were prevented only by the inclusion of both. It is impossible to apply the prohibition of fees-tail, and their conversion into fee-simple in the first clause, to succession of donees, remainders and remainder-man in the last clause, or to apply the limitations on these in the last clause to fee-tail in the first clause; it is impossible to make the latter clause an exception to the former, for then it would mean fee is prohibited and converted into fee-simple, *except* that if the fee-tail is to a succession of two donees it shall not be void; that is, the fee-tail shall be void, *except* when it is no fee-tail. It is equally impossible to make it a condition or qualification to the first clause; necessarily, therefore, it is an *addition* to it.

Again, the consequences of violating each of the two clauses are entirely different; if the deed or will prescribes a fee-tail, the first clause makes it a fee-simple in the first taker; if the deed or will prescribes a succession of donees beyond two living when it is made, it is void only as to the illegal succession of donees; the effect then depends on the estate of the first donees and the consequences of defeating the illegal successions: it may have a fee-simple, an estate for life, or a reversion, etc.

I think that our statute recognizes two evils to be remedied, perpetuities by procreation, and perpetuity by succession of donees, and prescribes a remedy for each of these two; that the two evils are distinct, and the two remedies equally distinct; that each

remedy has adaptation to the evil cured by it, and that to attempt to apply the remedy given for one of these two evils to the other is heterogeneous, unintelligible, and impracticable.

But I am told that the statute furnishes a rule of its own, and must be construed by itself only. I not only grant this, but I claim it as the correct rule.

But, if adverse counsel means that in construing, we must translate fee-tail or fee-simple as something else than fee-tail or fee-simple according to their well-established meaning, or that we must translate succession of donees as being something else than a succession of takers by purchase, that is, by deed or will, I deny his position and say that the statute, so far as its language applies to estates in fee-tail or fee-simple, applies to them according to their legal definition as defined in the law books, so far as it applies to successions of donees applies to them as donees taking in succession by purchase under the will or deed of the testator or grantor.

Adverse counsel argue that these deeds do not come within the definition of a fee-tail, because to the words heirs of the body is superadded "begotten by L. H. Smith." A special entailment is where it is to a person and *certain heirs of his body,* and this very case is given by Blackstone, who upon it says: "Here no issue can inherit but such as are the issue of both." 2 Bl. Com. 114; 1 Coke on Lit. 200; 2 Ld. Ray, 1153; Preston on Est. 486.

The language of both deeds has every feature necessary to create a fee-tail; it is to her and *her heirs,* that make it a hereditary fee; it is to her and the heirs of her body, that limits the hereditary fee to her lineal heirs, that makes a fee-tail, for both words of *inheritance* and *procreation* from the first taker are in both deeds; if either words of inheritance or procreation had been wanting it would not be a fee-tail, but either a fee-simple or a remainder; for example, if to "her and her heirs," with no words of procreation from her, that would create a fee-simple; if to her and her children *after her death,* without words of inheritance, since children can take by donation as well as by inheritance, it would be a life-estate in her with remainder to her children; but since there are both inheritance and procreation, the estate given to Mrs. Smith is in her fee-tail. 1 Wash. on R., p. 74, §§ 30, 31; 2 Bl. Com. 114, 115.

When, therefore, the statute prohibts estates-tail and converts

them into fee-simple estates, it recognizes estates-tail so defined, and converts them so defined into fee-simple estates as defined by law. The rule in the Shelley case was never abolished or subverted, and has nothing obnoxious in it. It applies as well to the word "heirs" as to the words "heirs of the body," and simply declares that both take by inheritance and not by purchase, and as to both the rule has been universally recognized as a proper rule; but, "heirs" created a fee-simple, and heirs of the body a fee-tail; the fee-simple was not obnoxious, the fee-tail was; the statute does not change the rule, but preserving the fee-simple, it does abolish the obnoxious fee-tail estate and converts it into the approved fee-simple.

Now, as to the latter clause or proviso of the statute, there is no ambiguity about it, if you confine its application to perpetuities created by a succession of donees, but if the estate prescribed by the language of the deed or will is a common law estate-tail, it is impossible to apply the proviso to it without creating discord and nonsense. The first clause disposes of and converts that estate into a fee-simple, but if the deed or will prescribes a succession of donees, they are limited by the proviso to the period of two lives in being, etc. The obscurity that sometimes perplexes judges and lawyers is not in the rule of law, but in determining whether a particular deed or will does by its terms prescribe a fee-tail or a succession of donees; when that question is answered the case is solved, especially if it be answered that it prescribes a fee-tail.

I propose to solve that question in this case. I admit that there are cases in which, although the word "heirs" or words "heirs of the body" are used in the will or deed, it has been adjudged, and rightly adjudged, that the persons answering to that description would take the estate as second donees from the donor, and not by inheritance from the first taker. These are exceptional cases; they are not random cases; they are founded on principle; *incompatibility* is the key-word to a solution, not incompatibility of the estate prescribed with some supposed or conjectured purpose of the donor, but incompatibility of the estate prescribed with something overriding the prescribed terms, in the face of the will or deed.

I think I may safely assert that not a case can be found where it has been so held, unless in that case, to hold otherwise would be incompatible with the face of the deed or will. It has been

so held in cases like these, which I wish to develop distinctly, as I shall hereafter have use for the principles in reviewing Mississippi decisions.

First—Where no estate of *freehold* was given to the first taker, or he gets only a chattel interest; for the reason that the first taker takes no inheritable estate, and therefore the second takers, though called "heirs" or "heirs of the body" cannot take by inheritance from the first, and cannot take otherwise than as second donees from the donor. 4 Kent, 221.

Second—Where the will or deed on its face explains that the words "heirs" or "heirs of the body" are used only to point out individuals as second donees. In those cases the definitely expressed will of the donor dominates the rule.

Third—Where the will or deed superadds upon the words "heirs" or "heirs of the body" other words of limitation over, that engraft a new line of inheritance on the persons called "heirs" or "heirs of the body" varying from the line of inheritance, that those words, if left alone, would create from the first taker, because the new engrafted line diverges from the line of "heir" or "heirs of the body" to the first taker, the deed shows that these words were not intended to create a fee-simple or a fee-tail in the first taker, but to describe second donees.

Where the will or deed is to A and "his heirs" or to A and the "heirs of his body," but designates as such heirs or heirs of his body, children of the first taker who cannot inherit the property, in those cases it is impossible to give effect to the language of the will or deed by inheritance, and therefore, from necessity, the will or deed is construed to create a succession of donees. I confidently repeat the assertion above cited in proof of it, 2 Kent, 222, and the English authorities there referred to, and I quote his conclusion: "The rule in Shelley's case has continued down to the present time in full vigor and with commending authority. All the modern cases contain one uniform language and declare that the words "heirs" and "heirs of the body," whether in deeds or wills, are words of limitation, unless it clearly and unequivocally appears that they were used to designate certain individuals answering to that description at the death of the first taker," that is, unless it clearly and unequivocally appears on the face of the deed or will that those words were used to designate certain persons as second donees and not as heirs to the first donee.

Chancellor Kent then further says, "that the same rule has been received and adopted in the United States," and from pages 229 to 233 verifies his assertion by numerous American authorities sustaining the rule that the words "heirs" or "heirs of the body" are words of limitation on the inheritance and the will or deed is to be construed, unless such a construction is plainly incompatible with the donor's purpose unequivocally expressed in the face of the deed or will.

It is claimed by adverse counsel that Mississippi decisions antagonize the foregoing principles, and this brings us to a review of the adverse argument and a review of the Mississippi decisions. * * *

I will review them, and in so doing, will try to group them on principle in the following classes:

1. Where, in the deed or will, the word "heirs" has been used, and yet, because of provisions of the deed or will, incompatible with the general meaning of what word as a word of inheritance in fee-simple, that word has been held to mean children as second donees, and thereby created a life-estate with remainder, or to mean "heirs of the body" and create a fee-tail.

2. Where, in the deed or will, the words "heirs of the body" have been used, and yet because of provisions of the deed or will incompatible with the general meaning of those words of inheritance in fee-tail, those words have been held to mean, children as second donees and created a life estate with remainder.

3. Where, in the deed or will, the word "heir" or words "heirs of the body" have been used without any provision that was incompatible with the general meaning of these words as words of inheritance, they were held to mean just what they express as words of inheritance and create a fee-simple or fee-tail as the words mean.

Of the first class, Powell *v.* Brandon, 23 Miss. 344. The devise was "to testator's son, Matthew N. Brandon, and after his death to put in possession of the land and slaves his lineal descendants to the latest posterity with the same privileges that he has during his life." Matthew N. was put in possession during his life and died leaving no lineal descendants. Powell, a creditor of Matthew N., claimed that Matthew N. took a fee-simple, which he had the right to subject to payment of his demand; the testator's heirs claimed that Matthew took only a life-

estate, which reverted on Matthew's death without lineal descendants; the court sustained the creditor for two distinct reasons. One, because lineal descendants to the latest posterity is too remote a perpetuity; the other, because if otherwise valid it would make the estate an estate-tail, which section 2286 would convert into a fee-simple. The first reason is founded on the proviso, the last on the first clause of the section 2286; the last reason is upon the idea that "to his lineal descendants to the latest posterity" is incompatible with a fee-simple estate, and therefore reduces what without those words would be a fee-simple estate to a fee-tail and brings that case directly within the principles creating exceptions, within the first class above, and the principles on which those exceptions are founded. This case also holds that the rule in the Shelley case in relation to heirs and heirs of the body is still in force.

Jordan v. Roach, 32 Miss. In this case the will was: "to *my daughter* for her separate use and *her heirs forever,* but if she should die without issue, or if her child or children surviving her should die before they become twenty-one years old, then the estate devised to her shall revert to my other children and their heirs, share and share alike." Mrs. Jordan had two children that survived her, both of whom died before becoming twenty-one years old. Their father claimed as their heir at law. The testator's other children claimed as reversioners under the will. For Jordan it was contended that the estate given to Mrs. Jordan, by the words of the will could by no possible contingency depart from the line of the heirs of her body, and that, therefore, notwithstanding it was "to her and her heirs forever," it gave her a fee-tail which the statute converted into a fee-simple, that descended from her to her children, from them to Jordan, their father. For the reversioners it was contended that the words "to her and her heirs forever" gave her a fee-simple, and that the other clauses in the will urged in behalf of Jordan as being incompatible with a fee-simple in Mrs. Jordan, were not incompatible; that the will as above quoted made that fee-simple defeasible and created the reversion by the occurrence of either of two things—death of Mrs. Jordan without issue, or death of her surviving issue under twenty-one years old.

Throughout the case it was recognized by counsel and court that if Mrs. Jordan, by the will, took a fee-tail, then Mr. Jordan held

a fee-simple by inheritance from her children—the statute having converted that fee-tail into a fee-simple in her.

The court reached two definite results: First—That Mrs. J., notwithstanding the words "to her and her heirs forever," because the other clauses showed that the will confined the estate to the line of her body descendants, took a fee-tail estate, by the statute. Second—It was converted into a fee-simple, which defeated the reversion. This is a case in which an estate given to Mrs. Jordan and *her heirs forever,* is converted into a fee-tail by clauses in the will incompatible with a fee-simple in her—incompatible because if the estate could descend to none but her lineal descendants it was no fee-simple. I have nothing to say about the correctness of the result in that case, I only define the principles on which the court acted. They come under the rule as exceptions, and in accordance with that rule, make "her heirs forever" mean heirs of her body.

Of the second class:

Carroll *v.* Rennick, 2 S. & M. 798. The marriage contract that originated that case "conveyed slaves for the use of the wife during her natural life," and from the termination of that estate, "to the heirs of her body," and *their heirs forever,* and if she should die without such heirs, or having such, if they should die before mature age, then limitations over to the wife's brothers, *and their heirs forever.* The case only involves the validity of the limitation over to the wife's brothers and their heirs forever. It was a Tennessee contract and her courts decided that the limitation was too remote, and that the whole interests vested in the wife; our court intimated that under our statute the limitation might be good. There was no question in it about entailment; but if there had been the wife's children would have taken as second donees and not as heirs of the wife; for these reasons, in the face of the contract, and wholly incompatible with an estate-tail in the wife, the estate conveyed to her was only during her natural life; that estate (said the contract) would terminate at her death; upon its termination, the second donees, called heirs of her body, would not take an estate-tail, but a fee-simple estate to them and their heirs forever. But, again, it engrafts a new line of inheritance on the persons called in the contract "heirs of the body," and that line is a fee-simple *from them* which is wholly incompatible with a *fee-tail* descent from their mother; the two

lines would diverge as far as the north is from the east. This is then a case in which an incompatible provision makes heirs of the body mean children as second donees taking a fee-simple estate.

Hampton *v.* Rather, 30 Miss. 193, is a gift of slaves to a daughter and the heirs of her body forever. It was held that the proviso of section 2286 of the Code of 1871 refers exclusively to conveyances and devises of lands. That the statute is itself a recognition of the Shelley rule, and equivalent to a declaration that it shall be applied in all cases in which, under the operation of the statute, it could be applied, and that said section 2286 was intended to abolish entailments of land and slaves and raise the entailment to the dignity of fee-simple estates. And it further decides that the proviso is definite and intelligible; that the boundaries of the limitations permitted by that proviso are marked out with unmistakable certainty; that the object of section 2286 was to free property from the fetters of entailment; that the terms of the deed "to his daughters and the heirs of her body forever" would convey an estate in fee-tail of land and therefore does convey the whole interest in personal property. It was further held that section 2291 was intended to make uniform the construction of certain words often used in making contingent limitations— that is, limitations contingent on dying without issue, and some other like phrases, all of which that section makes to signify "dying without issue then in being or born in ten months thereafter."

The foregoing is a case in which the court could answer whether the deed with the words "to her and the heirs of her body forever" unhampered by any provisions incompatible with the inheritable meaning of those words, would convey a fee-tail in land, and therefore does convey the whole interest in personal property.

Of the third class:

I refer again to Hampton *v.* Rather, 30 Miss. 193, just reviewed. I consider it directly in point and in harmony with the cases presently to be reviewed of this third class.

McKenzie *v.* Jones, 39 Miss. 230. The words of the deed are "to my wife, Charlotte McKenzie, and the heirs of her body by me begotten," that was all of it.

The testator died leaving his wife and several children of their joint procreation. Here are the very words of the deed now under consideration. In that case, as in this, there were no pro-

visions in the deed incompatible with a fee-tail estate in the wife; the only question to be decided was what estate did Charlotte, the widow, take under the deed? It was insisted that the limitation contained in the deed created an estate-tail, which by our statute was conveyed into a fee-simple in her; on the other side, it was contended that the words "by me begotten or to be begotten," specified individuals to take the estate jointly with the wife, and therefore the estate in the wife was not an estate-tail, and therefore not converted into a fee-simple by the statute. The court said rightly, that it was very clear that those words made an estate-tail special; they are a limitation to the heirs of their body jointly begotten, which is an estate-tail; the words here employed are words of limitation and not of purchase. 1 Co. on Lit. 200; 2 Ld. Ray. 1153; Preston on Est. 486.

Observe that the court decided the case on the first clause of section 2286 relative to fees-tail without reference to the limitations of the proviso against perpetuities by succession of donees. Observe that the court decided it without reference to section 2291, which only construes certain words used in creating certain contingent limitations; and the court did right, for the first clause makes a rule for one class of estates, perpetuities by fees-tail, the proviso for another class, perpetuities by succession of donees, and section 2291 is only a rule of construction as to certain words used in contingent limitations; upon the words used in that deed or in the deeds under review, neither the proviso nor section 2291 could have any effect—the words in both deeds stood for themselves and had a definite meaning, and the first clause of section 2286 plainly declared the effect of them. It was impossible to make any application of the proviso or any application of section 2291 to the words of inheritance in that case; it is equally impracticable in this.

Dibrell *v.* Carlisle, 48 Miss. 704. The deed conveys land to a trustee for the use of the wife and the heirs of her body forever. Says the court: "The record presents the question, what interest does the wife take under the conveyance to a trustee for the use of herself and the heirs of her body forever?"

The court then holds "that where a rule of the common or statute law is direct and governs the case with all its circumstances on the particular point, a court of equity is as much bound by it as a law court," and then the court further holds: "The words

'heirs of the body,' in a conveyance of a legal estate, are words of limitation of the estate to the first taker, and not words of purchase for the heirs of the body; these words create an estate in fee-tail which by our statute is converted into a fee-simple, and she took under the terms of the deed the entire trust estate absolutely;" cites Warren v. Haley, S. & M. Ch. Rep. 647. This case is to the point and controlling.

See also, Cannon v. Barry, 59 Miss. 290.      *     *     *

Brief of Nugent & McWillie:

What was the character of the estate first granted? The granting words are followed by the parties to whom the lands are conveyed—to Mary A. Smith—"and the heirs of her body, begotten by the said Lemuel H. Smith," of whom there were *six* then in being, and the covenant ran in their favor. If it had been to Mrs. Smith and the *issue* of her body, or to her and her *children,* it is evident that it would only have created an estate for life.   1 Wash. Real Prop., p. 77, par. 40.

The omission of the word "heirs" would have this effect, and therefore an estate-*tail* is said to be one of inheritance, which, instead of going by descent to heirs generally, goes to the heirs of the donee's body. This means to his lawful issue, his children, and through them to his grandchildren in a direct line, so long as his posterity endures in a regular order and course of descent, and upon the death of the first owner without issue, the estate determines. Id., p. 72, par. 22. A limitation in a deed to one and the heirs of his body creates an estate-tail. Id. 23. As estate-tail *special* is an estate which is descendable to the heirs of the donee begotten by her husband, named as in this case. Smith on Real & Personal Property, Law Library, 16; 8 Sevier, p. 106; 48 Miss. 691.

But estates-tail are prohibited by our statute, and all such estates are declared to be estates in fee-simple. Code 1857, p. 307; Code 1871, § 2286. It would seem therefore that by the mere force of this statute Mrs. Smith took an estate in *fee-simple* under the deed, unless the proviso to the act qualifies what precedes it. Estates-tail, general or special, being prohibited, such estates are wholly unknown to and prohibited by our law; but there is legislative authority given for disposing of lands otherwise than for a term of years or in fee-simple, and a new

mode of conveyancing warranted. You may make, if you choose, a conveyance to a *succession of donees then living, not exceeding two,* and to the heirs of the body of the remainder-man, and in default thereof to the right heirs of the donor in fee-simple. Changing the position of the words we reach this conclusion: "You may make a conveyance to two donees then living, in succession, and to the heirs of the body of the remainder-man, and in default thereof, to the right heirs of the donor in fee." It said estates-*tail* are abolished henceforth and forever, but legislative sanction is given for a conveyance that is here *specially* defined, and about which there can be no mistake.

Kirby *v.* Calhoun, 8 S. & M. 470, turned upon the construction of a different statute from that under consideration here. H. & H., § 26, p. 343. Now, in reference to that, the high court adopts the language of Kent: "These provisions sweep away at once the whole mass of English and American adjudication on the meaning, force and effect of that limitation. The statute speaks so peremptorily as to the construction it prescribes that the court may not, perhaps, hereafter feel themselves at liberty to disregard its directions. It is impossible not to feel relief at the final settlement in any way of this litigious question by legislative enactment."

In Newell *v.* Newell, 9 S. & M. 70, speaking of the will under construction, in view of the statute, the court says: "That statute prescribes a rule at once definite and certain."

Powell *v.* Brandon, 24 Miss. 360, *et seq.,* is a lucid exposition of the meaning "heirs and heirs of the body," whether they are to be construed as words of limitation or words of purchase, and holding to the common law interpretation unless the contrary meaning is to be gathered from the deed definitely. So that, in this case, it is clear that the grantor intended that the heirs of the body of Mrs. Smith should take in their character of heirs, lineal descendants, and not as purchasers. Hampton *v.* Rather, 30 Miss. 201; 48 Miss. 705; 32 Miss. 617-620.

If the statute speaks so peremptorily that the courts cannot disregard it, and gathering intention from the deed itself, the grantor confessedly attempted to, and did by his deed, create an estate-tail, then there can be no doubt that, by sheer force of law, Mrs. Smith took a fee in the lands conveyed by the first deed. There is nothing to break the force of this proposition unless we

resort to subtleties of construction. There is no difficulty in fixing a meaning to the statute; and *as written it has been interpreted.* The statute mastering the deed and giving it a complete character because of the *words used,* there is and must be an end to the controversy. The deed passing a fee-simple interest, the complainant has no right in the land conveyed by the first deed. You cannot look elsewhere for a meaning, as held in the Robinson case, for there is nothing on the face of the deed in any place to qualify its granting clause. So the High Court of Errors and Appeals believed and decided in McKenzie *v.* Jones, 39 Miss. 230, a case exactly like this, and so the Legislature supposed when the precise statute was re-enacted. It would unsettle all our notions of a correct jurisprudence to reverse this adjudicated rule of property; to say that the old court erred and this court is right in entertaining a contrary view. If twenty-two years of acquiescence by the people, the courts and the Legislature, in this construction of a deed and the statute bearing on it, must go for nothing, in lieu of age that may well bear the imprint of iconoclasm. Indeed it may not be too broad to say that a new departure can only result in leaving the whole matter in doubt, for a new court will have to pass between the conflicting decisions in order to determine a rule of property for its successor, and thus conclude the question as a kind of referee. It is far better to let the law as once interpreted stand until the Legislature shall see fit to make a change. The court has declared that the statute applied to a deed on *all fours with this,* convert the fee-tail into a fee-simple. If this court say not, which is right? Take the deed as it reads—I mean the first deed—and few would hesitate to say, in the light of the clear language employed, as has been well said: "There are some questions in law, the final settlement of which is vastly more important than *how* they are settled, and among these are rules of property long recognized and acted upon under which rights have vested. However much the court, as now constituted, may differ from the decisions of its predecessors upon such questions it will not overrule them." Rockhill *v.* Nelson, 24 Ind. 422, 428. See Harrow *v.* Myers, 29 Ind. 469; Emerson *v.* Atwater, 7 Mich. 12.

This adjudication can be safely invoked here. The appellee has acquired rights upon the faith of the decision in 39 Miss., *supra;* the ancestor of the appellants, recognizing the right of absolute disposal under her father-in-law's deed, executed the trust

deed through which the rights of the appellee have become fixed. Both parties in interest have concurred in the same construction of the deed, and have relied upon a solemn adjudication of the court of last resort in this State as furnishing the power and authority to act. If any other view is to be taken now, it should be restricted to new cases, and deeds given and received after the decision is announced. Bank of Miss. *v.* Duncan & Marshall, 56 Miss. 173-174.

The reasons for following McKenzie *v.* Jones are controlling. Aside from this, we do not consider it unsound, or a judicial repeal of a statute. The legislature did not seem to think so, and the facts as they appear on the face of the deed itself, do not warrant the assertion. It is not complimentary to the court and counsel to suppose they knew nothing of the statute, and we all know that "reports" do not always present the arguments of briefs of counsel correctly. Certainly Judge Handy was not a stranger to the statute laws of the State, to say nothing of his associates. Our present argument applies to the first deed.

We proceed now to the discussion of the second deed given to Mrs. Smith by Jonathan Smith and wife, and here there is a point of controversy which fairly arises. As to the lands included in the first deed and embraced in the second, it is quite clear that the estate of Mrs. Smith could not be curtailed or lessened; as to the other lands, there is some doubt. We quite agree with the adjudication of the court in Cannon *v.* Varry, 59 Miss. 302. "The object of the statute is to establish a limit beyond which the grantor cannot go, but within which he may exercise unbounded discretion, so that he may limit the remainder to the first born or to the last born, or to the married or single, or to the adult or minor heirs of the life tenant, taking care always that the fee shall vest within the prescribed period of the rule against perpetuities." That is the fair construction of the statute *proviso* and seems to accord with article 9 section 11, chapter 36, Code of 1857.

The second decree grants, bargains, sells and conveys to Mary H. Smith and her heirs of her body *begotten* by Lemuel H. Smith, 380 acres of land, including the 280 acres conveyed in 1862. The *habendum* is to Mary Smith during her life, and to her heirs begotten by the said Lemuel H. Smith forever. This deed was executed in 1875, but the Code of 1871 does not differ from that

of 1857, and the decision in 39 Miss. is applicable alike to it, unless there is, on the face of this latter deed, a different estate granted; or rather, unless taken as a whole the deed may be said to fall in with the proviso to the act abolishing entails without infringing upon the act itself.

In the case of Robinson *v.* Payne, 58 Miss. 690, we asked the court to give effect to the palpable meaning or intention of John Lowe in executing the deed to his daughter; let the old rule lapse into obscurity for the sake of doing justice to the complainants; and not to nullify an act of benevolence intended for Mrs. Robinson's children. We had no doubt then as to the intention of Lowe springing out of the deed, but were met by this utterance from the court: "The wisdom of the rule is less important than its certainty, since men may differ as to the question of wisdom, but cannot err when the standard is definite and unmistakable, however arbitrary; unless the more arbitrary it is, the easier it will be of ascertainment. The particular rule under consideration here will not apply when but one plain intention can be deducted from the instrument as a whole, and that intention must prevail whether it be discovered in the first or last clause of the instrument; nor has it any application where no particular estate is expressed in the granting clause, so that the *habendum* may be regarded as fixing that which was before uncertain, or when the *habendum* enlarges the estate conveyed by the premises, or, speaking generally, wherever it can be fairly said that the effect of the *habendum* is merely to enlarge, or explain or qualify the estate granted, without contradicting or nullifying it.    *    *    *    The rule simply is, that when there is an irreconcilable conflict between the two clauses, the granting clause must prevail."

If there were no statutes applicable to the *last* deed, we would not doubt that as to the land included in *it* and *not* included in the first deed, Mrs. Smith took a life estate. But we cannot ignore the statutes of the State as the existing law of the land, and as being, to all intents and purposes, in the mind of the donor when he executed the instrument, and as acting upon the instrument *proprio vigore* and becoming integrated into it.

It is not difficult to determine the caracter of the record or its extent, without reference to the statute. The premises conveyed an estate-tail and that by the statute was converted into a fee-simple. Every estate which shall be created an estate-tail shall

be an estate in fee-simple; so the law reads. These words and terms, and that mode of expression which shall *create an estate-tail, shall be an estate in fee-simple.* It is just as if the statute had said, a grant to A and the heirs of her body in the premises of a deed, shall be an estate in fee-simple. At the common law, a grant to A and her heirs would amount to a fee-simple; by the statute, a grant to A and the heirs of her body amounts to the same thing; heirs, and heirs of the body, are therefore synonymous in contemplation of our laws. It is not correct to say that the law cannot apply until this court shall settle the construction of the deed. That would be to assume the functions of the Legislature. The statute adheres to the deed like the sheet of Nesseus, and operates upon it from the beginning to the end. If, therefore, this proposition be a fair one, the case is exactly like that of Robinson *v.* Payne, *supra.*\* Had the parties designed to make a conveyance according to or under the statute, nothing would have been easier. He would have expressed no particular estate in the granting clause; that done, he necessarily conveyed a fee-simple estate and the *habendum* cannot be regarded as fixing that which was before uncertain. The estate could not be enlarged, explained or qualified by it without violating the law. It is impossible to lose sight of the statute wholly, and only begin to consider it when you want to evade its force and effect. In the Robinson case the premise granted a fee at the common law; in this case, under the *statute* defining and fixing the meaning of certain terms used, the same estate was granted. If the same estate, therefore, was granted, what difference does it make as to the manner in which the result is reached? There is the *fee-simple granted,* and whether resort be had to the common law or the statute, the same effect must follow. Had the Legislature intended any other result there would have been this added proviso to the clause: "Provided further, that this section shall not be applied to any deed at all, unless the court, on a consideration of the whole instrument, should be of opinion that the grantor intended to convey an estate-tail beyond the limit of that warranted under the first proviso of this section, whether the words in the premises convey an estate-tail or not." But there is no injunction upon the court to pursue any such investigation, and no sort of authority for engrafting an exception upon the wise provisions of the statute. Indeed, the true rule, *in view of the law,* is to read the deed and apply the law to it as you

read it. The true question is, what estate passes by the provisions of the deed under the laws? and there is no difficulty in answering it. Any other policy would hold the law in abeyance until the court, regardless of its provisions, had construed the deed taken as a whole. The courts are supposed to hold the scales of justice evenly balanced with covered eyes, but they are never thought to be blind so far as to *ignore* the law; and to ask them to go to the length suggested by Mr. Johnston, would be to say that the practical enforcement of a plain law should be made to turn upon the meaning of each deed as an entirety that might be brought before them for construction, and thus supersede the law in order to determine its application. The courts must thus be oblivious to a legislative enactment in order to be a free investigation into the intention of a donor, who, in the full use of his mental faculties, has executed a deed contrary to its clearly expressed terms. The policy of the law was to arrest a very great evil; the statute is unmistakable and inflexible, and there is no middle ground to take. The deed was not executed in the effort to create a special estate under the statute.

Thus considered, the second deed conveyed a fee-simple estate in the lands that are not included in the first deed. So Mrs. Smith supposed, and so her creditors believed when they accepted the conveyance. It could hardly be just to overturn 39 Miss., and there is no reason for making a bad precedent out of a charitable State tort.

Brief of W. P. & J. B. Harris:

The case here turns on the construction of certain deeds. In 1875 lands were conveyed by deeds. The words employed in the one case are "Granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey, unto Mary A. Smith, wife of Lemuel Smith, and the heirs of her body begotten by the said Lemuel Smith, the following land," etc., etc.

In the other case the words are: "Have this day granted, bargained, sold and conveyed, and do hereby grant, bargain, sell and convey unto said Mary A. Smith and her heirs of her body begotten by the said Lemuel Smith," etc. "To have and to hold, the above described premises * * * to the said Mary A. Smith during her life and to her heirs begotten by said Lemuel H. Smith, forever."

At the date of these deeds the rule was in full force as part of the law of real estate in Mississippi.

Any conveyance which, by the rules of the common law, of which 'the rule in Shelley's case is a part, would create an estate-tail, is by statute made to create an estate in fee-simple.

The rule in Shelley's case was applicable solely where by the terms of the deed or will, a life estate was given to the first taker, and a remainder mediately or immediately to his heirs or the heirs of his body. So that, if, in this case, the *habendum* had been put in the "premises" bodily, an estate in fee would have been conferred. Pengrove *v.* Comfort, 58 Miss. 649.

No view from the point, that words of procreation confine the limitation to heirs of the body *begotten by that husband,* can vary the construction. We have an estate-tail special, but nevertheless an estate-tail. 1 Cruise, p. 78, § 13.

It is to the heirs of the apparent life tenant, of her body and not of *their* bodies as to which says Sheppard Touchstone, there is a difference, for in this case the heirs of the bodies of both would take by whomsoever procreated.

The word "heirs" or words "heirs of the body" in deeds are al-' ways words of limitation. They mean a class of persons to take by inheritance in succession. The exceptions, if any, are rare, and the fact that there may be persons of the class living at the date of the deed, will make no difference. In wills, certain qualifying words following, from which an intimation appears, that the words are used in a different sense, have been allowed to control, but in deeds they are always allowed to have their common law force.

Here, then, we have a granting clause giving an estate-tail by the well established rules of law, which the statute converts into a fee-simple. In other words, the granting clause gives a fee-simple to Mrs. Smith. Of this there can be no doubt. If the granting clause gives a fee, or an estate of inheritance, then it cannot be reduced to a life-estate by the *habendum.*' Even if we hold that the premises give a fee-tail, yet being an estate of inheritance it cannot be reduced to an estate for life only by after words. Robinson *v.* Payne, 58 Miss. 690; 3 Wash. Real Prop. 372, 374; 4 Kent, 468.

We cannot hold that Mrs. Smith, the mother, and her heirs took together an estate for her life. Such a construction would run counter to every conceivable design which could be imputed to the

parties. There is no limitation over, and we cannot suppose reasonably that the grandmother, grantor, intended to reserve the fee in herself to revert after the life estate.

The heirs then must take by descent, or not at all. They take in the character and quality of heirs, and hence the words used are words of limitation. The word "forever" does not enlarge the estate, and certainly does not abridge it, and hence in operation without "heirs" it does not give an inheritance by the common law, and with that word it means an inheritance and no more.

OPINION.—COOPER, J.:

A careful examination has convinced us that the construction of our statute governing the limitations of estates contended for by counsel for the appellants is the correct one, and we would readily adopt it but for the decision in the case of McKenzie v. Jones, 39 Miss. 230. That case arose under the Act of 1822, and both court and counsel seem to have overlooked or ignored the proviso to the 24th section of that act. The decision, however, fixed the construction of the statute, and thereby established a rule of property, and we are constrained to follow it. Besides this, the statute has since been re-enacted and we must infer that it was done with a full knowledge on the part of the legislative department of the construction put upon it by the court.

*The decree is therefore affirmed.*